PACIFIC TRIAL ATTORNEYS
A Professional Corporation
Scott J. Ferrell, Bar No. 202091
sferrell@pacifictrialattorneys.com
Victoria C. Knowles, Bar No. 277231
vknowles@pacifictrialattorneys.com
4100 Newport Place Drive, Ste. 800
Newport Beach, CA 92660
Tel: (949) 706-6464
Fax: (949) 706-6469

Attorneys for Plaintiffs and the Proposed Class

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| BRADY LAPLANTE, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>SAM'S WEST, INC., an Arkansas corporation, d/b/a SAMSCLUB.COM,<br><br>Defendant. | Case No. '26CV2249 LL VET<br><br>**CLASS ACTION COMPLAINT FOR VIOLATION OF B&P CODE SECTION 17529.5 (UNLAWFUL SPAMMING)** |

## I. NATURE OF ACTION

1. Defendant Sam's West Inc. d/b/a Sam's Club ("SAM'S CLUB") pays commissions to various "affiliate marketers" that relentlessly spam everyone whose address they can harvest. SAM'S CLUB's affiliate marketers send spam use falsified header information, spoofed domains and nonsensical sending addresses to evade spam filters. They also use false and deceptive subject lines – everything that people rightfully ***hate*** about spam.

2. Fortunately, California's robust Anti-Spam Law imposes both strict liability and liquidated damages on entities like SAM'S CLUB that benefit from deceptive spam. It dispenses with the requirement of proving actual damages, intent, or scienter, and forces companies to actively monitor their e-mail promotions by imposing exceptionally broad liability.[1]

## II. PARTIES, JURISDICTION AND VENUE

3. Plaintiff is and was at all times mentioned herein a citizen of the State of California who received a misleading spam e-mail offering 50% off of a Sam's Club membership.

4. SAM'S CLUB is a corporation headquartered in Arkansas and incorporated in Delaware. It's principal place of business is 2101 SE Simple Savings Drive, Bentonville, AR 72712.

5. SAM'S CLUB deliberately outsources its membership solicitation to third-party affiliate marketers to reap the benefits of large-scale unlawful spamming. SAM'S CLUB financially incentivizes these affiliates — paying them on a per-lead or per-

---

[1] *See Hypertouch, Inc. v. ValueClick, Inc.*, 192 Cal. App. 4th 805, 829-30 (Cal. Ct. App. 2d Dist. 2011) (Section 17529.5 "impos[es] strict liability on advertisers who benefit from (and are the ultimate cause of) deceptive e-mails"); *Id*. at 822 (Section 17529.5 "does not require the plaintiff to prove that it relied on the deceptive commercial e-mail message or that it incurred damages as a result of the deceptive message"); Id at 821 ("Section 17529.5 … does not include any 'scienter' or intent requirement"); *Id*. at 820 ("[S]ection 17529.5 does not require the plaintiff to show that the defendant actually made a false or deceptive statement…. [B]y its plain terms, the statute is not limited to entities that actually send or initiate a deceptive commercial e-mail, but applies more broadly to any entity that advertises in those e-mails."

conversion basis — to flood inboxes with deceptive "discounts" on SAM'S CLUB products, knowing that aggressive, non-consensual email campaigns generate sign-ups. These affiliates are not rogue actors; they are integral to SAM'S CLUB's customer-acquisition strategy and are compensated precisely because spam works. By structuring its marketing this way, SAM'S CLUB attempts to enjoy the profits of illegal email campaigns while plausibly denying responsibility for the very misconduct it knowingly authorizes, directs, and benefits from — conduct squarely prohibited by California Business & Professions Code § 17529.5.

6. This Court has subject matter jurisdiction of this action pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d)(2), because: (i) there are 100 or more class members, (ii) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs, and (iii) there is at least minimal diversity because at least one Plaintiff and Defendant are citizens of different states. Indeed, based upon publicly available information, the class is believed to include over 100,000 members and the amount in controversy is believed to exceed $100 million.

7. SAM'S CLUB's own website confirms that it actively markets and offers its services within California, including through a page on its website dedicated to its California locations. *See* https://www.samsclub.com/club-directory/ca. By maintaining location-specific webpages targeting California consumers, advertising its services within the state, and soliciting business from California residents, SAM'S CLUB purposefully directs its commercial activities toward the forum. This demonstrates that SAM'S CLUB avails itself of the benefits and protections of California's laws and reasonably anticipates being haled into court here. Accordingly, the exercise of personal jurisdiction over SAM'S CLUB in California is proper because its in-state marketing and consumer outreach are neither random nor attenuated, but instead reflect deliberate and ongoing business operations within the state.

8. Venue is proper in this District because a substantial part of the events or omissions giving rise to the claim occurred in this District.

## III. FACTUAL ALLEGATIONS

9. Plaintiff Brady Laplante is a California resident and citizen and is the owner of the e-mail address bradyl9@aol.com. SAM'S CLUB spams him and other class members relentlessly. As just one example, in January of 2026 he received a spam e-mail from the nonsensical address **keepyourcadence@news.snapshopoffer.com** bearing the subject line **"Save 50% On Club Membership - Join For Half Off - Just $25 at Sam's Club."** That spam is attached hereto as **Exhibit "A".**

10. The spam was sent from a "spoofed" e-mail address to conceal the identity of the true sender and evade spam filters. Indeed, after receiving the e-mail, Plaintiff was confused and thought the e-mail might be a legitimate message from Snapchat advising him that he had won something. As such, he searched the publicly available WHOIS database found at https://lookup.icann.org/en/lookup to try to identify the sender associated with the domain, but was unable to do so because the sending domain was not registered to, publicly associated with, or traceable to SAM'S CLUB through WHOIS or any other public registry. Indeed, according to the WHOIS database, the domain's owner is "Withheld for Privacy" with a mailing address in Iceland.

11. With is confusion growing, Plaintiff clicked on the link in the spam and was eventually taken to a landing page of Defendant's website at https://www.samsclub.com/join/club?couponId=G4D5O&pid=aff_rak&siteID=KeZEb9j7Xlw-9Xw5IF3iisw4N9wCybiKVw&ranMID=38733&ranEAID=KeZEb9j7Xlw&ranSiteID=KeZEb9j7Xlw-9Xw5IF3iisw4N9wCybiKVw&pubNAME=Email%2C+Social%2C+Content%2C+and+Display+-+Performance+Group. The fact that the spam email directed Plaintiff to SAM'S CLUB's landing page containing numerous tracking and attribution parameters demonstrates that the message was part of a coordinated affiliate marketing campaign rather than a one-off communication. The presence of fields such as campaign IDs, publisher identifiers, referral sources, and sub-ID parameters shows that the link was uniquely generated to track the recipient's click, attribute that traffic to a specific marketer or "publisher," and ultimately credit that affiliate for any resulting lead or transaction. This type of

infrastructure is standard in affiliate networks and reflects a pay-for-performance model, where third-party marketers are incentivized to drive traffic — often through mass email campaigns — using tracked links supplied or approved by the advertiser. Because SAM'S CLUB receives, processes, and benefits from this tracked traffic, and has the ability to monitor and compensate the affiliate responsible, the link structure itself is strong evidence that the email was sent as part of an affiliate spam operation rather than independent or unsolicited conduct.

12. The email's metadata and embedded code reflect multiple indicia of spam evasion and deceptive marketing practices because they demonstrate deliberate efforts to obscure the sender's identity, bypass authentication protocols, and manipulate how the message is interpreted by both spam filters and recipients. The header information reveals inconsistencies in sender domains and failed or suspicious authentication signals (such as SPF/DKIM/DMARC issues), showing the message was relayed through third-party infrastructure or spoofed sources rather than a legitimate, traceable business.

13. Going from bad to worse, the subject line of the spam — "Save 50% On Club Membership - Join For Half Off - Just $25 at Sam's Club" – was not merely misleading; it was outright false and exemplifies a classic bait-and-switch. The subject line affirmatively represents that the consumer will receive a 50% discount and obtain a membership for $25, when in reality the offer on the above-referenced landing page provides only a 40% discount and a price of $30:




14. This is not a matter of nuance or ambiguity—the core economic terms of the offer advertised in the subject line are materially different from those actually available. By advertising a deeper discount and lower price than what is ultimately provided, the email is designed to lure consumers into opening and engaging with the message under false pretenses. Once the consumer's attention is captured, the true, less favorable terms are revealed, thereby completing the bait-and-switch: an attractive but fictitious offer is used as the "bait," and a more expensive, inferior offer is substituted as the "switch." Such conduct is inherently deceptive because it induces consumer engagement through false price and discount representations that are likely to affect a reasonable consumer's decision-making.

15. The preceding is just a single example of the spam that Defendant sends to class members. Based on publicly available sources, it is believed that SAM'S CLUB is responsible for over 100,000 spam e-mails to class members in California every year.

16. Plaintiff's e-mail address is a "California e-mail addresses" because Plaintiff ordinarily accesses the e-mail address from computers in California. *See* Bus. & Prof. Code § 17529.1(b).

17. The spam identified above is an "Unsolicited Commercial e-mail advertisement" because plaintiff had no pre-existing relationship with Defendant and

because the e-mail was initiated for the purpose of advertising or promoting the lease, sale, rental, gift offer, or other disposition of any property, goods, services, or extension of credit. *See* Bus. & Prof. Code § 17529.1(c).

18. Plaintiff never gave "direct consent" to receive commercial e-mail advertisements from Defendant or its marketing agents. Indeed, "direct consent" under the statute requires a unique level of specificity and clarity that must be informed, knowing, and explicit — meaning that consumers must be told clearly that they are agreeing to receive advertising emails from a particular sender, and for what purpose, at the time they provide their email address.

19. The above spam violates Bus. & Prof. Code § 17529.5 in three separate and distinct ways:

a. **Unauthorized Use of a Domain Name in Violation of Section 17529.5(a)(1).** The email reflects unauthorized and deceptive use of the domain snapshopoffer.com because that domain bears no relationship to SAM'S CLUB, appears to a reasonable consumer to be associated with a different company (Snapchat), and its owner cannot be found through the WHOIS registry or another search.

b. **Misrepresented Header Information In Violation of Section 17529.5(a)(2).** The email contains misrepresented header information in violation of Business and Professions Code § 17529.5(a)(2) because the header data was deliberately structured to conceal the true sender and prevent the recipient from identifying or tracing the advertiser responsible for the message. Section 17529.5(a)(2) prohibits header information that is falsified or misrepresented, including the use of a "from" name, return address, or domain that does not accurately identify the party who initiated or benefited from the email. Here, the email was sent from a spoofed sender address (keepyourcadence@news.snapshopoffer.com) that bears no relationship to SAM'S CLUB, the promoted offer, or any legitimate

business disclosed in the message. Nothing in the header permits a recipient—or a reasonable investigator using publicly available tools such as WHOIS — to determine who actually sent or authorized the email. This lack of traceability is not incidental; it is the intended effect of using fabricated header information to mask the sender's identity and evade accountability. California courts have repeatedly held that header information is misrepresented where it fails to identify the actual sender on its face and is not readily traceable to that sender, even if the advertiser's identity is included elsewhere. Because the header here affirmatively obscures the true sender and frustrates traceability to the responsible advertiser, it constitutes misrepresented header information in violation of § 17529.5(a)(2).

c. **Deceptive Subject Line and Contents in Violation of Section 17529.5(a)(3).** The email contains a literally false subject line and misleading contents in violation of Business and Professions Code § 17529.5(a)(3). The subject line of the spam — **"Save 50% On Club Membership - Join For Half Off - Just $25 at Sam's Club"** – was not merely misleading; it was outright false and exemplifies a classic bait-and-switch. The subject line affirmatively represents that the consumer will receive a 50% discount and obtain a membership for $25, when in reality the underlying offer provides only a 40% discount and a price of $30. *See* Exhibit "B." This is not a matter of nuance or ambiguity—the core economic terms of the offer advertised in the subject line are materially different from those actually available. By advertising a deeper discount and lower price than what is ultimately provided, the email is designed to lure consumers into opening and engaging with the message under false pretenses. Once the consumer's attention is captured, the true, less favorable terms are revealed, thereby completing the bait-and-switch: an attractive but

fictitious offer is used as the "bait," and a more expensive, inferior offer is substituted as the "switch." Such conduct is inherently deceptive because it induces consumer engagement through false price and discount representations that are likely to affect a reasonable consumer's decision-making.

20. Although a plaintiff need not plead or prove actual damages to bring a claim under the statute, Plaintiff has in fact suffered concrete, particularized harm as a result of Defendant's conduct. Plaintiff spent valuable time and attention investigating the misleading offer; searching the WHOIS database to learn who the e-mail came from; incurred opportunity costs and lost productivity; and suffered depletion of device and network resources, including storage space, bandwidth usage on a metered data plan, and battery life.

21. The unauthorized domain name, misleading headers and subject lines also invaded Plaintiff's privacy and disrupted the ordinary use and enjoyment of Plaintiff's email account, diminishing its value as a communication tool and necessitating additional filtering and security precautions. These injuries were directly caused by Defendant's unlawful email and are redressable by statutory and injunctive relief.

22. Defendant has not established and implemented, with due care, practices and procedures reasonably designed to effectively prevent unsolicited commercial e-mail advertisements.

## IV. CLASS ACTION ALLEGATIONS

23. Plaintiff brings this action on behalf of all persons similarly situated and seeks certification of the following class:

**All California citizens who received any commercial e-mail promoting any SAM'S CLUB membership at a California e-mail address where such email(s) contained: (1) a falsified, misrepresented, or forged domain name; (2) falsified, misrepresented, or forged header information; or (3) false or misleading subject line or contents.**

24. The above-described class of persons shall hereafter be referred to as the "Class." Excluded from the Class are any and all past or present officers, directors, or employees of Defendant, any judge who presides over this action, and any partner or employee of Class Counsel. Plaintiff reserves the right to expand, limit, modify, or amend this class definition, including the addition of one or more subclasses, in connection with a motion for class certification, or at any other time, based upon, inter alia, changing circumstances and/or new facts obtained during discovery.

25. **Numerosity.** The Class is so numerous that joinder of all members in one action is impracticable. The exact number and identities of the members of the Class is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, but Plaintiff is informed and believes, and thereon, alleges that there are at least 100,000 members of the Class.

26. **Typicality.** Plaintiff's claims are typical of those of other members of the Class, all of whom have suffered similar harm due to Defendant's course of conduct described herein.

27. **Adequacy of Representation.** Plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class. Plaintiff has retained attorneys who are experienced in the handling of complex litigation and class actions, and intend to prosecute this action vigorously.

28. **Predominance of Common Questions of Law or Fact.** Common questions of law and fact exist as to all members of the Class that predominate over any questions affecting only individual members of the Class. These common legal and factual questions, which do not vary among members of the Class, and which may be determined without reference to the individual circumstances of any member of the Class, include, but are not limited to, the following:

a. Whether Defendant sent unsolicited commercial e-mail to Class members;
b. Whether Defendant sent such messages using forged headers, falsified domains, and spoofed e-mail addresses.

29. **Superiority.** A class action is superior to other available methods for the fair and efficient adjudication of this controversy because individual litigation of the claims of all members of the Class is impracticable.

30. **Ascertainability**. Defendant keeps computerized records of its sales and customers through, among other things, databases storing customer orders, customer order histories, customer profiles, customer loyalty programs, and general marketing programs. Defendant has one or more databases through which a significant majority of members of the Class may be identified and ascertained, and they maintain contact information, including email addresses.

## V. CAUSES OF ACTION

### FIRST CAUSE OF ACTION

### Violation of Cal. Business & Professions Code § 17529.5

31. Plaintiff received the above unsolicited commercial e-mail at a California e-mail address within one year prior to filing the Complaint at a California e-mail address.

32. As shown above, the spam violated one or more provisions of Section 17529.5.

33. Defendant is strictly liable for violation of Section 17529.5 for sending spam and is liable in the amount of $1,000 per spam per class member.

34. Defendant has not established and implemented, with due care, practices and procedures reasonably designed to effectively prevent unsolicited commercial e-mail advertisements that are in violation of Section 17529.5 that would justify a reduction in liquidated damages.

35. Plaintiff and every Class member who received any violative e-mail are entitled to $1,000 in liquidated damages per e-mail from Defendant (Cal. Bus. & Prof. Code § 17529.5(b)(1)(B)(ii)), and to recover reasonable attorney's fees and costs (Cal. Bus. & Prof. Code § 17529.5(b)(1)(C)).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff seeks judgment against Defendant as follows:

a. For an order certifying that the action be maintained as a class action, that Plaintiff be designated as class representative, and that undersigned counsel be designated as class counsel;

b. For all available declaratory, legal, and equitable relief including injunctive relief;

c. For statutory damages;

d. For punitive damages;

e. For attorneys' fees and costs as allowed by law; and

f. For any and all other relief at law or equity that may be appropriate.

Dated: April 9, 2026

PACIFIC TRIAL ATTORNEYS, APC

By: */s/ Scott J. Ferrell*
Scott J. Ferrell
Attorneys for Plaintiff and the Proposed Class